# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

**JIMMYDAN GIBBS**                                                                    **PLAINTIFF**

V.                           No. 3:25-cv-00040-ERE

**FRANK BISIGNANO, Commissioner**
**of the Social Security Administration**                                          **DEFENDANT**

## ORDER[1]

## I.   Introduction:

On December 6, 2021, Jimmydan Gibbs filed a Title II application for disability and disability insurance benefits. *Tr. 14*. On June 22, 2022, he filed a Title XVI application for supplemental security income benefits. *Id*. In both applications, he alleged disability beginning on March 1, 2019. *Id*. The applications were denied at both the initial and reconsideration levels of review. *Id*. Mr. Gibbs appeared via telephone at a hearing before an administrative law judge ("ALJ") on December 13, 2023. *Id., Tr. 34*. In a January 19, 2024 decision, the ALJ determined that Mr. Gibbs was not disabled. *Tr. 14-25*. The Appeals Council declined to review the decision, making the ALJ's decision the final decision of the Commissioner. *Tr. 1-7*. Mr. Gibbs now seeks judicial review.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. *Doc. 5*.

For the reasons below, I reverse the ALJ's decision and remand for further review.

## II. **The Commissioner's Decision:**

At step one of the required five-step analysis, the ALJ found that Mr. Gibbs had not engaged in substantial gainful activity since the alleged onset date of March 1, 2019.[2] *Tr. 16.* At step two, the ALJ determined that Mr. Gibbs has the following severe impairments: affective mood disorder, dependent personality disorder, post-traumatic stress disorder ("PTSD"), anxiety disorder, and attention deficit hyperactivity disorder ("ADHD"). *Id.*

The ALJ found that Mr. Gibbs did not have an impairment or combination of impairments meeting or medically equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 17-19*. Next, the ALJ determined that Mr. Gibbs has the residual functional capacity ("RFC") to perform work at all exertional levels, with the following limitations: (1) only simple, repetitive one-to-three step tasks; (2) no more than incidental interactions with the public and no more than occasional interactions with coworkers and supervisors; (3) no more than occasional changes

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

2

in the work setting due to limitations in adapting to change and managing stress; (4) no work at a forced pace (also known as assembly line pace); (5) never required to make plans or set goals independent of others; and (6) no work in proximity to hazards. *Tr. 19.*

At step four, the ALJ found that Mr. Gibbs is unable to perform any past relevant work.[3] *Tr. 23*. Relying on the testimony from a Vocational Expert ("VE"), and considering Mr. Gibbs's age, education, work experience, and RFC, the ALJ found that significant numbers of jobs existed in the national economy that he could perform, such as kitchen helper, automobile detailer, and housekeeper. *Tr. 24-25*. Therefore, the ALJ found that Mr. Gibbs was not disabled. *Id.*

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we

---

[3] Mr. Gibbs has past relevant work as a retail sales associate. *Tr. 23.*

> also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. Overview of Relevant Facts and Medical History

Mr. Gibbs testified about his conditions and symptoms at the hearing. He reported suffering for years from severe depression, severe anxiety, and PTSD. *Tr. 38-40*. Mr. Gibbs said that temper and anger issues caused problems at work, resulting in multiple terminations. *Id*.

Mr. Gibbs' agoraphobia made it difficult for him to leave his house. *Tr. 38-50, 493-498*. He experienced poor sleep, nightmares, and suicidal thoughts. *Id*. He heard voices that told him to kill himself. *Id*. He had involuntary movements, noticed by multiple examiners, and seizure-like episodes which left him writhing on the

floor. *Id*. Mr. Gibbs testified he did not remember the last time he showered or brushed his teeth. *Id*. He wore the same clothes each day. His mother and sisters handled chores and cooking, and he was no longer able to do things for enjoyment. *Id*. While he could drive thirty miles to a doctor appointment, he only did that once a month. *Tr. 49*. He went to the store only when absolutely necessary. *Id.* He reported feeling worthless and terrified most of the time and described every day as a struggle. *Tr. 46, 51-52*.

Medicine helped to some degree, but providers adjusted Mr. Gibbs' medications frequently due to side-effects. *Tr. 42-52*.

Medical records from Mid-South Health Systems showed that Mr. Gibbs met with licensed counselor Jeffrey Taylor multiple times. *Tr. 603-638, 730-742*. At a June 2022 visit, Mr. Taylor noted signs of psychosis, delusions, and hallucinations. *Tr. 603*. Mr. Gibbs was tearful and verbalized a need for help. *Id*. He said he wasn't sleeping well and was easily triggered. *Id*. Mr. Taylor scored Mr. Gibbs' depression survey in the "severe" range. *Tr. 607-608*. His anxiety survey score confirmed "severe anxious distress." *Id.* In a subsequent note, Mr. Taylor wrote that Mr. Gibbs presented as depressed, disheveled, and withdrawn. *Tr. 734*. Mr. Gibbs said he had not bathed in a long time and did not want to do anything. *Tr. 735*.

Mr. Gibbs saw APRN Ottysha White multiple times in 2022 and 2023 at Mid-South Health Systems. At a July 27, 2022 appointment, APRN White noted that Mr.

5

Gibbs had "unbearable" depression, and that he had both auditory and visual hallucinations. *Tr. 620-625*. Mr. Gibbs said that his psychotropic medications were not helping. *Tr. 621*. APRN White diagnosed him with severe major depressive disorder with psychotic features and PTSD. *Tr. 620-621*. At an August 2022 appointment, APRN White noted that Mr. Gibbs was paranoid, unkempt, depressed, and "thinking about death a lot." *Tr. 629-634*. She diagnosed unstable depression and PSTD. *Tr. 632*. Three months later, Mr. Gibbs reported to APRN White that he was hearing voices and saw a black fog when sleeping. *Tr. 737*. He was irritable and described his Seroquel medication as very sedating. *Id*. At a February 2023 visit, Mr. Gibbs told APRN White that he was terrified most of the time and reported broken sleep, racing thoughts, and suicidal ideation. *Tr. 817-818*.

### C.  Mr. Gibbs' Argument for Reversal

Mr. Gibbs contends that evidence supporting the ALJ's decision is less than substantial. He argues that the ALJ erred in evaluating the medical opinions of APRN Ottysha White and Catherine Adams, Ph.D. I find support for Mr. Gibbs' argument with respect to APRN White's opinion.

On November 8, 2023, APRN White filled out a medical source statement on a checkbox form. *Tr. 824-825*. She indicated that Mr. Gibbs would have moderate and marked limitations in all areas of mental work functions. *Id*. The social interaction categories showed marked limitations; however, APRN White assessed

an extreme limitation in Mr. Gibbs' ability to interact with the public in an appropriate manner. *Id*.

On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s). *See* 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c) (2017). Instead, ALJs are required to analyze whether opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. *See* 20 C.F.R. § 416.920c(c).

An opinion is "more persuasive if it is supported by explanation and relevant objective medical evidence, and it is consistent with other evidence in record." *Norwood v. Kijakazi*, No. 21-3560, 2022 WL 1740785, at *1 (8th Cir. May 31, 2022) (unpublished per curiam) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 WL 3451519, at *2 (E.D. Ark. June 24, 2020).

The first two factors—supportability and consistency—are the most important, and an ALJ must explain how he evaluated those two factors. 20 C.F.R.

7

§ 416.920c(a); *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022). An ALJ commits reversible error when he does not address both supportability and consistency of a medical opinion. *Bonnett v. Kijakazi*, 859 Fed. Appx. 19, 20 (8th Cir. 2021).

The ALJ found APRN White's medical opinion unpersuasive because it was inconsistent with and not supported by the evidence Ms. White received from Mid-South Health Systems.[4] *Tr. 23*. But rather than cite to that evidence the ALJ summarily noted that Mr. Gibbs could care for his mother, consistently went to appointments where he was routinely described as attentive, cooperative, and medication compliant. *Id*.

First, Mr. Gibbs indicated that he did not do much while at his mother's house, and, actually, his mother supported him emotionally. *Tr. 37-48*. Mr. Gibbs' sister had to keep his utilities paid and remind him of doctors' appointments. *Id*. And while the ALJ correctly noted Mr. Gibbs was medication compliant, there is no indication the ALJ considered the need to frequently change medications to manage symptoms or Mr. Gibbs' reports of the medications not working.

---

[4] Catherine Adams, Ph.D., examined Mr. Gibbs in 2019 and diagnosed him with PTSD and dependent personality disorder. *Tr. 493-498*. She found that Mr. Gibbs would have moderate difficulties in concentrating, attending to work, and completing tasks in a timely manner. *Id*. Without citation to medical evidence, the ALJ found her opinion to be partially persuasive. *Tr. 22*.

The ALJ mentioned evidence from Mid-South Health Systems as a reason to discount APRN White's opinion, but failed to cite to those records, which arguably do not support this conclusion. *Id*. For example, the notes from visits with APRN White showed that Mr. Gibbs was regularly depressed, disheveled, and paranoid. *Tr. 811-816, 827-844*. He often said he could not sleep due to nightmares. *Id*. He was terrified of losing his mother. *Id*. APRN White adjusted Mr. Gibbs' medication regularly. *Id*.

In her medical source statement, APRN White noted moderate or marked limitations in twenty functional areas. The ALJ categorically rejected her findings, without identifying which portions he found unpersuasive. *Tr. 23*. APRN White opined that Mr. Gibbs would have an extreme limitation in interacting appropriately with the public. The ALJ did not specifically address this point, which was fundamental to his RFC specifying no more than incidental interaction with the public and no more than occasional interaction with supervisors and coworkers. *Tr. 19*. The record indicates that similar interaction levels have resulted in previous work altercations involving Mr. Gibbs. The ALJ did not explain with any specificity *why* he dismissed the marked and extreme limitations on personal interactions indicated by APRN White.

The ALJ did not cite specific records that contradicted ARPN White's assessment of Mr. Gibbs' ability to interact with others. The Mid-South Systems

records arguably support APRN's White's opinion. Certainly, they provide no reason to summarily discount it. In any event, the ALJ failed to cite specific records that are inconsistent with or contradict APRN White's opinion. "Absent some explanation for finding an inconsistency where none appears to exist, [the court] will not fill in the gaps for the ALJ." *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (omitting citation and internal quotations).

The ALJ found fault with APRN White's opinion because it was on a checkbox form, but as Mr. Gibbs' attorney points out, a checkbox opinion is not invalid *ipso facto*, especially if the record tends to support it. *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005).

In conclusion, the ALJ failed to give good reasons for categorically rejecting APRN White's opinion. In particular, his failure to provide any explanation for rejecting APRN White's assessment of Mr. Gibbs' inability to get along with others is problematic and requires reversal.[5]

---

[5] The ALJ must give reasons for his findings. See *Guess v. Kijakazi*, No. 4:20-cv-00887-JTR, 2021 WL 5983193 at *9 (E.D. Ark. Dec. 17, 2021) ("an ALJ must address both supportability and consistency with respect to a medical opinion, and he must offer good reasons for his determination. Merely sprinkling his discussion with those two words does not suffice.").

## IV.  Conclusion:

For the reasons stated above, I find that because the ALJ erred in his evaluation of APRN White's medical opinion, the decision is not supported by substantial evidence.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED, and the case is REMANDED for further administrative review.

Dated 2 September 2025.

_____
UNITED STATES MAGISTRATE JUDGE